# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FIRE AND POLICE RETIREE HEALTH CARE FUND, SAN ANTONIO, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. CCB-18-3670 |
| DAVID D. SMITH, *et al.* | * | |
| Defendants, | * | |
| and | * | |
| SINCLAIR BROADCAST GROUP, INC. | * | |
| Nominal Defendant. | * | |
| * * * * * * * * * * * * * | | |
| NORFOLK COUNTY RETIREMENT SYSTEM, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. CCB-18-3952 |
| DAVID D. SMITH, *et al.* | * | |
| Defendants, | * | |
| and | * | |
| SINCLAIR BROADCAST GROUP, INC. | * | |
| Nominal Defendant. | * | |
| * * * * * * * * * * * * | | |

## MEMORANDUM

These are two separate verified shareholder derivative actions, brought by plaintiffs Fire and Police Retiree Health Care Fund, San Antonio ("San Antonio") and Norfolk County

1

Retirement System ("Norfolk"), derivatively on behalf of Sinclair Broadcast Group, Inc. ("Sinclair"). San Antonio and Norfolk allege breaches of fiduciary duty by the defendants, including members of Sinclair's Board of Directors ("the Board").[1,2] The cases have not yet been consolidated, but are considered together for the purposes of this motion.[3] Pending before the court is the defendants' motion to dismiss or, in the alternative, for a stay.[4] The motion has been fully briefed.[5] Oral argument was heard on November 7, 2019. For the following reasons, the court will deny the motion to dismiss and deny the motion to stay without prejudice pending a period of limited discovery.

## FACTUAL AND PROCEDURAL HISTORY

Sinclair, a telecommunications conglomerate and the largest owner of local television stations in the country, is a publicly traded company with thousands of shareholders. The family of Sinclair's founder, Julian Sinclair Smith, exercises significant control over the company. The four Smith brothers—defendants David D. Smith, Frederick G. Smith, J. Duncan Smith, and Robert E. Smith—comprise 50 percent of Sinclair's Board. Additionally, through their ownership of Sinclair stock, the Smith brothers control approximately 75 percent of shareholder votes. (Sinclair Proxy Statement, Defs.' Mot. Ex. A at 3,[6] ECF No. 24-3).[7]

---

[1] The defendant members of the Board are David D. Smith, Frederick G. Smith, J. Duncan Smith, Robert E. Smith, Howard E. Friedman, Daniel C. Keith, Martin R. Leader, and Lawrence E. McCanna.
[2] San Antonio and Norfolk also name Christopher S. Ripley, President and Chief Executive Officer of Sinclair, as a defendant.
[3] The parties agree that these actions should be consolidated.
[4] The court construes the defendants' motion as a motion to dismiss without prejudice.
[5] San Antonio and Norfolk filed a motion for leave to file a surreply and attached the surreply to their motion. The court has reviewed the surreply, and the motion will be granted.
[6] Citations to page numbers in memoranda and exhibits refer to internal pagination, rather than page numbers assigned by CM/ECF.
[7] Unless otherwise noted, citations to CM/ECF refer to entries in Docket No. CCB-18-3670. Docket entries related to this motion are identical in both cases.

On May 8, 2017, Sinclair entered into a merger agreement to acquire Tribune Media Company ("Tribune") for $3.9 billion. To obtain Federal Communications Commission ("FCC") and Department of Justice ("DOJ") Antitrust Division approval, and to comply with limits on national ownership, the merger agreement required Sinclair to divest certain television stations to independent third parties. Over the next year, Sinclair proposed multiple divestitures to companies and individuals with close ties to the Smith family. On July 16, 2018, FCC Chairman Ajit Pai released a statement expressing concern about the proposed Sinclair/Tribune merger, noting that "the evidence [the FCC has] received suggests that certain station divestitures that have been proposed to the FCC would allow Sinclair to control those stations in practice, even if not in name, in violation of the law." (San Antonio Compl. ¶ 91, Docket No. CCB-18-3670, ECF No. 1; Norfolk Compl. ¶ 120, Docket No. CCB-18-3952, ECF No. 1). On July 18, 2018, the FCC voted to refer the proposed merger to an Administrative Law Judge ("ALJ"), based on its belief that Sinclair's FCC disclosures contained material misrepresentations. On August 8, 2018, Tribune pulled out of the merger. The next day, Tribune sued Sinclair in the Delaware Chancery Court, alleging breach of contract and claiming over $1 billion in damages.

San Antonio and Norfolk filed shareholder derivative actions in this court on November 29, 2018, and December 21, 2018, respectively. The complaints allege that the defendants breached their fiduciary duties to Sinclair and its shareholders in connection with the failed merger. Defendants Martin R. Leader and Lawrence E. McCanna filed a motion to dismiss both derivative complaints pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 or, in the alternative, for a stay. The remaining defendants have adopted and joined the motion.

Many facts relevant to the resolution of this motion do not appear in the complaints. Specifically, the defendants' motion is premised on their claim that Sinclair's Board created a

3

Special Litigation Committee ("SLC") to respond to shareholder concerns before San Antonio and Norfolk filed their complaints, and that San Antonio and Norfolk's failure to discuss the SLC in their complaints requires dismissal. San Antonio and Norfolk, however, sharply contest the defendants' claims regarding the SLC.

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

On a motion to dismiss for failure to state a claim, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Conversion of a motion to dismiss to a motion for summary judgment, however, "is not appropriate when the parties have not had an

opportunity to conduct reasonable discovery." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015).

## ANALYSIS

### I.

San Antonio and Norfolk argue that the defendants' motion should be treated as a motion for summary judgment because the defendants rely on documents outside the pleadings. Indeed, this case presents the unusual situation where almost all the facts relevant to the resolution of the motion are absent from the complaints. The defendants' motion is premised on their claim that Sinclair's Board created an SLC before San Antonio and Norfolk filed suit.[8] Because an SLC existed at the time the complaints were filed, the defendants argue, San Antonio and Norfolk failed to comply with the pleading requirements for derivative complaints set forth in Rule 23.1, which requires plaintiff shareholders to "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). This so-called "demand requirement" is a "substantive and pleading prerequisite" in derivative actions. *Werbowsky v. Collomb*, 362 Md. 581, 600–01 (2001).[9] The defendants contend that San Antonio and Norfolk were required to make a demand on the SLC, or state why such a demand would have been futile. As San Antonio and Norfolk only pleaded demand futility with respect to the entire Board, the defendants argue, their complaints should be dismissed.

---

[8] The defendants claim that the Board created the SLC in August 2018, after a shareholder made a demand on the Board to investigate alleged breaches of fiduciary duty. (Defs.' Mot. at 8, ECF No. 24-1; Hr'g Tr. at 6:23–7:4, ECF No. 58)
[9] The parties do not dispute that Maryland law applies.

5

The complaints are devoid of any discussion of an SLC, but in their Response, San Antonio and Norfolk sharply contest the defendants' claims regarding the date of formation, membership, and scope of authority of the SLC. The defendants' entire argument for dismissal thus depends on the court's acceptance of the defendants' factual assertions regarding the SLC.

The defendants support their claims regarding the SLC with documents attached to their motion to dismiss. "Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge [the document's] authenticity." *Zak*, 780 F.3d at 606–07 (internal citation and quotation marks omitted). The Fourth Circuit has "recognized a narrow exception to this standard, under which courts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment." *Id.* at 607. The defendants claim that the court may take judicial notice of Securities and Exchange Commission ("SEC") filings. (Defs.' Mot. at 5 n.3, ECF No. 24-1). The defendants are only partially correct.[10] While the court can take judicial notice of the *existence* of the SEC filings, it can only notice facts contained therein "'not subject to reasonable dispute,' provided that the fact[s] [are] 'generally known within the court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *See Zak*, 780 F.3d at 607 (quoting Fed. R. Evid. 201(b)). Even then, "the court must construe such facts in the light most favorable to the plaintiffs." *Id.*

---

[10] The defendants cite *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014), for the proposition that the court may take judicial notice of SEC filings. (Defs.' Mot. at 5 n.3, ECF No. 24-1). In *Oberg*, however, the Fourth Circuit stated that "[i]t is well established that we may properly take judicial notice of matters of public record, including *statutes*," *id.* (internal citation and quotation marks omitted) (emphasis added), but *Oberg* did not discuss SEC filings at all.

6

Central to the defendants' argument that an SLC existed before San Antonio and Norfolk filed suit is their claim that "Sinclair publicly disclosed the formation of the SLC on November 8, 2018 in its quarterly SEC report." (Defs.' Mot. at 8, ECF No. 24-1). This fact does not appear in the complaints. In order to properly consider it, the court would need to take judicial notice of a statement made in Sinclair's November 8, 2018, Form 10-Q (the "November 2018 10-Q"), filed with the SEC. (Def.'s Mot., Livshiz Decl. Ex. E, ECF No. 24-7). In relevant portion, the November 2018 10-Q reads:

> [B]eginning in late July 2018, Sinclair received letters from two putative Company shareholders requesting that the board of directors of the Company investigate whether any of the Company's officers and directors committed nonexculpated breaches of fiduciary duties in connection with, or gross mismanagement with respect to: (i) seeking regulatory approval of the Tribune Merger and (ii) the HDO, and the allegations contained therein. *A committee consisting of independent members of the board of directors has been formed to respond to these demands.*

(*Id.* at 21) (emphasis added).

The court cannot take judicial notice of the fact that an SLC existed when San Antonio and Norfolk filed their complaints, as this is a fact "subject to reasonable dispute." *See Zak*, 780 F.3d at 607 (quoting Fed. R. Evid. 201(b)). Indeed, whether an SLC existed then—or even exists now—is the question upon which this motion turns. In Maryland, an SLC is "composed of independent, disinterested directors, either inside the corporation or specially appointed from outside the corporation" and is "vested with the authority to render a corporate decision." *Boland v. Boland*, 423 Md. 296, 332 (2011); *see also Oliveira v. Sugarman*, 451 Md. 208, 224 n.8 (2017) ("We adopt the definition [of SLCs] set forth in *Boland*[.]"). An SLC's authority to render a corporate decision sets it apart from "other demand response committees," which merely "make . . . recommendation[s] to the board[.]" *Oliveira*, 451 Md. at 224. Even taking the November 2018 10-Q at face value, it is not clear what type of demand response committee

7

Sinclair disclosed: one with authority to render a corporate decision, or simply one authorized to make a recommendation to the Board. *Cf. Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 216 (4th Cir. 2009) (declining to take judicial notice of one party's interpretation of a decisional document of the U.S. Army Corps of Engineers).[11]

San Antonio and Norfolk further claim that, even if an entity authorized to render a corporate decision existed when they filed suit, it was not an SLC because it was not "composed of independent, disinterested directors." *See Boland*, 423 Md. at 332. According to the defendants, the SLC was initially comprised of Board members Keith, Friedman, Leader, and McCanna.[12] Shortly thereafter, Keith and Friedman "voluntarily resigned from the SLC, in an abundance of caution, due to their previous connections with Mr. Fader[13] and the Smith Brothers, respectively." (Defs.' Mot. at 8 n.6, ECF No. 24-1).[14] San Antonio and Norfolk challenge the defendants' assertion that Keith and Friedman resigned before the complaints were filed. As the November 2018 10-Q is silent as to the membership of the purported SLC, the battle over this factual dispute is waged though documents even further disconnected from the

---

[11] The defendants cite a Second Circuit opinion for the proposition that, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). It is indeed likely that San Antonio and Norfolk were aware of the November 2018 10-Q, as they cited previous Sinclair 10-Q filings in their complaints. But the defendants are not simply asking the court to take judicial notice of the existence of an SEC filing, or an undisputed fact contained therein. The defendants are instead asking the court to take judicial notice of the fact that an SLC existed before San Antonio and Norfolk filed their complaints, based on the defendants' interpretation of an SEC filing. As the court has explained, this is a crucial difference.

[12] At the time, the only other Board members were the four Smith brothers.

[13] Steven Fader is an individual with close ties to Sinclair and the Smith Brothers. During the merger attempt, Sinclair's proposed divestiture of certain entities to Fader caught the attention of the FCC and was perceived as indicative of Sinclair's "potential . . . misrepresentation and lack of candor." (Norfolk Compl. ¶ 125; San Antonio Compl. ¶ 95).

[14] In a March 22, 2019, letter to counsel for San Antonio, defendants' counsel Aaron Marcu claims that Friedman resigned from the SLC in August 2018, and Keith resigned on September 11, 2018. (Pls.' Opp'n, Smith Decl. Ex. 3, ECF No. 40-4).

four corners of the complaints.[15] *Cf. Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 510–11 (4th Cir. 2015) ("The maze of cross-references to exhibits and interpretations of specific provisions within them makes this case particularly ill-suited to adjudication at the motion to dismiss stage.").

Due to the uncertainty surrounding the membership and scope of authority of the entity disclosed in the November 2018 10-Q, the court is unable to take judicial notice that Sinclair's Board created an SLC before San Antonio and Norfolk filed suit. But the court cannot simply exclude the November 2018 10-Q and preserve the motion as a motion to dismiss. The defendants' motion is premised on the existence of an SLC, as their core argument is that San Antonio and Norfolk were required to make a demand on the SLC prior to filing suit. But neither can the court convert this motion to one for summary judgment, as the parties have not had an opportunity to conduct reasonable discovery. *See Zak*, 780 F.3d at 606. Accordingly, the court will deny the defendants' motion to dismiss without prejudice.[16]

## II.

As an alternative to dismissal, the defendants argue that the court should stay the San Antonio and Norfolk cases pending the outcome of the SLC investigation. The Delaware Chancery Court has stated that once a board of directors forms an SLC to respond to shareholder demands, "this court typically (but not always) grants a stay of litigation to afford the committee time to determine whether the derivative action should be prosecuted." *Wenske v. Blue Bell*

---

[15] San Antonio and Norfolk base their suspicions about the SLC's membership on the defendants' production of several different versions of the Resolutions of the Board's August 7, 2018, meeting—the meeting during which the SLC allegedly was created. (Pls.' Opp'n at 8–11, ECF No. 40).

[16] As the court cannot reach the merits of the defendants' argument without improperly converting the motion to one for summary judgment, the court will not address whether San Antonio and Norfolk were required to make a demand on, or plead demand futility with respect to, the SLC rather than the entire Board.

*Creameries, Inc.*, 214 A.3d 958, 963 (Del. Ch. 2019).[17, 18] The grant of a stay, however, is not automatic. The Chancery Court has stated that "before this court will bless a special litigation committee's existence, and make accommodations to allow it to work, the court must first be satisfied the committee has been properly constituted." *Id.*

In *Biondi v. Scrushy*, the Chancery Court announced an exception to the "general rule" that, when an SLC has been formed, the court should stay litigation pending the outcome of the SLC's investigation. 820 A.2d 1148, 1165 (Del. Ch. 2003). The exception applies "in an atypical case when, based on the undisputed facts in the stay motion record, the committee's later decision to terminate the litigation could not command respect" because of an SLC's lack of independence. *Id.*[19] The Chancery Court determined that *Biondi* was such an atypical case because of "an odd confluence of unusual and highly troubling [undisputed] facts" that, "[t]aken together," convinced the court that the defendant SLC could not meet its burden of proving independence. *Id.* Those facts included: (1) SLC members' close ties to a target of the

---

[17] While Delaware Chancery Court opinions are not binding on this court, the Maryland Court of Appeals has stated that "[t]his Court frequently looks to Delaware courts for guidance on issues of corporate law." *Oliveira*, 451 Md. at 221 n.4.

[18] "The presumption in favor of a stay is grounded both in 'the inherent right of the board of directors to control and look to the well-being of the corporation in the first instance,' and in the interest in avoiding 'a duplication of discovery.'" *Milliken v. Am. Realty Capital Hosp. Advisors, LLC*, No. 18-CV-1757 (VEC), 2018 WL 3745669, at *5 (S.D.N.Y. Aug. 7, 2018) (first quoting *In re Oracle Corp. Derivative Litig.*, 808 A.2d 1206, 1211 (Del. Ch. 2002), then quoting *Abbey v. Comput. & Commc'ns Tech. Corp.*, 457 A.2d 368, 375 (Del. Ch. 1983)) (applying Maryland law).

[19] More precisely, the *Biondi* court stated that the exception applies when an SLC's later decision to terminate litigation "could not command respect under *Zapata*." *Biondi*, 820 A.2d at 1165. The reference here is to Delaware Supreme Court case *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981), which outlines how Delaware courts review an SLC's ultimate denial to take responsive action on a shareholder's demand. In *Boland*, the Maryland Court of Appeals rejected the element of *Zapata* analysis that requires courts to exercise their own business judgment in reviewing the results of an SLC investigation. *Boland*, 423 Md. at 348–49. The Chancery Court's reference to *Zapata* in *Biondi*, however, was to "the *Zapata* requirement of independence." *See Biondi*, 820 A.2d at 1165. The Maryland Court of Appeals has articulated a requirement of independence analogous to the *Zapata* requirement. *Compare Zapata*, 430 A.2d at 788 ("The corporation should have the burden of proving independence, good faith and a reasonable investigation [of the SLC], rather than presuming independence, good faith and reasonableness."), *with Boland*, 423 Md. at 352 ("Under our standard of review, the circuit court must first conclude that the SLC was independent and acted in good faith . . . [T]he SLC members are entitled to no presumption of independence and good faith.").

investigation; (2) a "begrudging" or "inadequate[] original delegation of authority" to the SLC; (3) the resignation of an arguably-conflicted SLC member "in the face of public pressure"; and (4) the SLC chairman's public announcement that an outside investigation had already vindicated the target of the nascent SLC investigation. *Id.* at 1165–66.[20]

Some of the facts that made the Chancery Court uneasy in *Biondi* are present in this case. First, the court notes the shifting membership of the SLC and its original inclusion of members with admittedly close ties with the Smith brothers. *See id.* at 1156. ("If a special litigation committee is comprised of directors with compromising ties to the key officials who are suspected of malfeasance . . . its ability to instill confidence is, at best, compromised and, at worst, inutile."). The defendants claim that, shortly after the formation of the SLC, Keith and Friedman resigned due to long-standing personal and business relationships with the Smith brothers. In support of this timeline, the defendants point to a March 22, 2019, letter from defendants' counsel to counsel for San Antonio, stating that Friedman resigned in August 2018 and Keith resigned on September 11, 2018, (Pls.' Opp'n, Smith Decl. Ex. 3, ECF No. 40-4), and a statement in a January 25, 2019, SEC filing announcing that retired judge Benson Legg would join Leader and McCanna on the SLC, (Defs.' Mot., Livshiz Decl. Ex. B, ECF No. 24-4). But San Antonio and Norfolk counter that the defendants have produced multiple versions of the purported Resolutions of the August 7, 2018, Board meeting, documents which San Antonio and Norfolk claim were either created or modified in February 2019.[21] Every version of the Resolutions list Keith and Friedman as SLC members. Clearly, the composition of the SLC, and

---

[20] The *Biondi* court stated that it would have denied the stay based on the SLC chairman's announcement alone, but noted that the other facts "ma[de] the denial of a stay an easy call." *Id.*
[21] San Antonio and Norfolk base this claim on a "file path" at the bottom of the Resolutions, which contains a reference to February 2019, and their analysis of the documents' metadata.

11

whether those members were sufficiently independent from the Smith brothers, remains a hotly contested issue.

Second, the original delegation of authority to the SLC may have been inadequate. *See Biondi*, 820 A.2d at 1155–56 (the creation of an SLC through a "series of resolutions that are confusing," which appeared to both vest the SLC with full decisional power and also limit that power, resulted in an "original mandate [which] was not as clear as one would hope"). According to the Resolutions, the "SLC (once composition is finalized) is authorized with full plenary power" to investigate shareholder demands and determine how Sinclair should respond. (Defs.' Mot., Livshiz Decl. Ex. F, ECF No. 24-8).[22] This language suggests that the Board did not intend to vest the SLC with full power until its membership was stable. As discussed in Part I, *supra*, for an entity to qualify as an SLC under Maryland law, it must have the authority to render a corporate decision. *Boland*, 423 Md. at 332. Perhaps the appointment of former Judge Legg finalized the composition of the SLC, allowing it to begin its work in earnest. But according to the defendants, the SLC "has been conducting an investigation with the assistance of independent outside counsel since August 2018," well before he was appointed. (Defs.' Mot. at 21, ECF No. 24-1). It is thus possible, based on the defendants' own evidence and representations, that a portion of this investigation was conducted by an entity that did not qualify as an SLC under Maryland law.

The unresolved questions surrounding the composition and scope of authority of the SLC certainly do not "instill confidence." *See Biondi*, 820 A.2d at 1156. But the *Biondi* exception to the general rule that a stay should issue is a narrow one, requiring "undisputed facts" that the

---

[22] The defendants produced multiple versions of the Resolutions. At the motions hearing, defendants' counsel suggested that "the final version" of the Resolutions was Exhibit F of the Livshiz Declaration. (Hr'g Tr. at 68:22–69:6, ECF No. 58).

12

SLC's ultimate decision could not command respect in the courts. Here, almost all of the facts regarding the SLC are disputed. Indeed, at the conclusion of its investigation, the SLC may be able to show the court that the SLC satisfies the independence standard. *See Boland*, 423 Md. at 350 ("[T]he SLC's substantive conclusions are entitled to judicial deference, *provided that* the SLC was independent, acted in good faith, and made a reasonable investigation and principled, factually supported conclusions . . . the directors are entitled to no presumption regarding the above requirements." (emphasis added)). On this record, the court cannot find that "undisputed facts" compel a denial of the defendants' motion to stay.[23]

Nevertheless, the decision whether to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Raplee v. United States*, 842 F.3d 328, 335 (4th Cir. 2016) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). There are many unresolved questions about the legitimacy of the SLC. While "[o]rdinarily, and for obvious reasons, the inquiry whether the SLC's recommendation should be respected is . . . made after the committee has concluded its investigation and issued its report," *Biondi*, 820 A.2d at 1164, the court is not confident that the SLC's report will be issued in a timely fashion. In their Reply, the defendants stated that "the SLC's investigation is ongoing and is expected to be concluded by the end of this year [2019]." (Defs.' Reply at 18, ECF No. 44).

---

[23] At the motions hearing, plaintiffs' counsel adopted the position that it would be impossible for Sinclair, a corporation controlled by the alleged "primary wrongdoers," to form an SLC capable of satisfying the requirement of independence. (Hr'g Tr. at 55:22–56:11, ECF No. 58). Plaintiffs' counsel further stated that *Gorby v. Weiner*, No. CIV.A. TDC-13-3276, 2014 WL 4825962 (D. Md. Sept. 23, 2014), provides a "bright line" rule supporting their position. (Hr'g Tr. at 56:10–11, ECF No. 58). The court disagrees. In *Gorby*, Judge Chuang held that a plaintiff in a derivative suit was not required to make a pre-suit demand on the company where the "alleged primary wrong-doer" owned 50 percent of the company. *Gorby*, 2014 WL 4825962, at *5 (internal quotation marks omitted). There was no SLC at issue in *Gorby*. Even acknowledging that here, as in *Gorby*, the alleged primary wrongdoers have majority control over the company, the Delaware Chancery Court has stated that "even a conflicted corporate board can wrest control of a derivative claim from a stockholder by establishing a committee of independent directors to investigate the claim and determine whether to prosecute it." *Wenske*, 214 A.3d at 963. Accordingly, the court cannot declare, as a matter of law, that Sinclair was incapable of forming an SLC.

But at the motions hearing, defendants' counsel stated that "[t]he end of April [2020] is the target date" for the issuance of the SLC's final report. (Hr'g Tr. at 13:18–25, ECF No. 58). When asked about the reasons for the delay, counsel stated that they "had been trying to coordinate [their] document collection and discovery efforts . . . with Sinclair's defense of litigation by Tribune in Delaware Chancery Court." (*Id.* at 14:12–19). But as plaintiffs' counsel noted, the Chancery Court case is not scheduled for trial until October 2020. (*Id.* at 62:24–62:1). If the SLC continues to tether the pace of its investigation to the progress of the Chancery Court case, the SLC decision could be further delayed. Under these circumstances, the court is not eager to issue an indefinite stay of these proceedings.

The court will, therefore, deny without prejudice the motion to stay, but allow a limited period of discovery to resolve questions about the SLC. Discovery should include information about the formation and membership of the SLC and its scope of authority at different points in the investigation. Moreover, the defendants should produce a more definite timeframe for the completion of the SLC's work, including an explanation for how the SLC will ensure that potential delays in the Chancery Court case will not impede their investigation.

## CONCLUSION

For the foregoing reasons, the court will deny the defendants' motion to dismiss. The court will deny without prejudice the motion to stay, subject to renewal after a limited discovery period. A separate order follows.

12/9/19
Date

CCB
Catherine C. Blake
United States District Judge

14